IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

CAROLYN C. GRAVES, )
)
    Plaintiff, )
)
VS. ) CASE NO. _____
) JURY DEMAND
MID SOUTH WAFFLES, INC., d/b/a )
WAFFLE HOUSE, )
)
    Defendant. )

## COMPLAINT

### JURISDICTION:

1. This Honorable Court has jurisdiction of all of Plaintiff's claims, which arise from Tennessee statutory or common law, pursuant to 28 U.S.C. §1332 because of the complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

### VENUE:

2. This Honorable Court has venue of this action pursuant to 28 U.S. C. §1391(a)(2) because Plaintiff resides in this District, Defendant has one or more business locations within the Middle District of Tennessee and all or at least a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

### THE PARTIES:

3. Plaintiff is a citizen and residence Rutherford County, Tennessee and has been at times pertinent to the facts of this cause.

1

4. On information and belief, Plaintiff submits that Defendant Mid South Waffles, Inc. has been a foreign corporation registered to do business in the state of Tennessee and other locations in Middle Tennessee, with a restaurant location at 794 Nissan Drive, Smyrna, Rutherford County, Tennessee at all times relevant to the facts of this litigation.

FACTS:

5. Plaintiff was employed by the Defendant as a waitress at a Waffle House restaurant in Smyrna, Tennessee from October 21, 2009, through April 27, 2011. Prior to becoming Defendant's employee on October 21, 2009, Plaintiff had worked for a previous owner of the Smyrna Waffle House location for approximately eight to nine years. Prior to working at the Waffle House restaurant on Nissan Drive in Smyrna, Plaintiff had worked at a different Waffle House restaurant for approximately six years.

6. Plaintiff suffered a work-related injury to her right shoulder on February 5, 2011, while lifting dishes.

7. Plaintiff promptly reported her February 5, 2011, right shoulder injury to her employer.

8. Following her injury on February 5, 2011, the first medical treatment Plaintiff received was at the StoneCrest Medical Center emergency room where she was seen on February 5, 2011.

9. Pursuant to instructions from the StoneCrest ER doctor, Plaintiff was excused from working for the next two days.

10. The next treatment Plaintiff received for her right shoulder injury was from Dr. Marc R. Watkins at Concentra Medical Center in Murfreesboro where she began treatment on February 11, 2011.

2

Case 3:12-cv-00414   Document 1   Filed 04/26/12   Page 2 of 11 PageID #: 2

11. On February 11, 2011, Dr. Watkins prescribed physical therapy three times a week for two weeks, and he also set restrictions of no lifting over ten pounds, no pushing/pulling over ten pounds of force, and no reaching above shoulders.

12. On March 14, 2011, Dr. Watkins ordered an MRI of Plaintiff's right shoulder.

13. When Plaintiff was seen by Dr. Watkins on April 1, 2011, she was advised that the MRI revealed a partial tear of the supraspinatus tendon in her right shoulder for which he continued the restrictions he had initially specified, and he referred Plaintiff to an orthopedic surgeon.

14. Through the date of her termination on April 27, 2011, Plaintiff continued working with the restrictions specified by Dr. Watkins on February 11, 2011.

15. Plaintiff promptly asserted a workers' compensation claim for her February 5, 2011, right shoulder injury.

16. Plaintiff's medical treatment has been provided by the employer as a workers' compensation benefit.

17. Even though Dr. Watkins advised Plaintiff on April 1, 2011, that her MRI report had revealed a partial tear of the right shoulder supraspinatus tendon and he had referred her for treatment to an orthopedic surgeon on that date, she was not seen by an orthopedic surgeon until she was seen by Dr. Kyle S. Joyner, Tennessee Orthopaedic Alliance, on May 3, 2011.

18. On April 27, 2011, Plaintiff was summoned to the back of the Waffle House restaurant on Nissan Drive in Smyrna by District Manager, Michelle Lowder, who confronted Plaintiff by stating/asking: "What's your problem? You're moping, slacking, and not doing your job. I don't understand why you don't put the dishes up. You are off restrictions, you are

3

Case 3:12-cv-00414   Document 1   Filed 04/26/12   Page 3 of 11 PageID #: 3

not working under doctors' orders any more. You are no longer on workers' compensation. I want you out of my unit." Ms. Lowder then immediately terminated Plaintiff.

19. When Plaintiff was initially seen by orthopedic surgeon, Dr. Joyner, on May 3, 2011, he diagnosed Plaintiff as suffering right shoulder impingement and partial thickness rotator cuff tear, for which he performed surgery on June 20, 2011. He also, on May 3, 2011, set the following restrictions: no lifting over ten pounds frequently, no lifting over ten pounds maximum, occasional overhead work, and occasional outstretched arm use.

20. Plaintiff received no progressive discipline or advance warning of any kind that Defendant was considering terminating her.

21. At all times after Plaintiff was injured on February 5, 2011, through the date of her termination, her work performance met the reasonable and legitimate expectations of her employer, and she was capable of performing her job with reasonable accommodations.

22. During the period of Plaintiff's employment by Defendant, she was never sanctioned or disciplined with reference to her performance of employment duties.

23. Due to her shoulder injury, Plaintiff did experience some pain and difficulty as she properly performed her employment duties.

24. There was no individualized inquiry by the Defendant into Plaintiff's medical or disability condition prior to or at the time she was terminated on April 27, 2011.

25. Following the report of her on-the-job injury on February 5, 2011, and the setting of restrictions of Dr. Watkins, her restaurant manager, "Joel" accommodated her restrictions after she provided him with documentation.

26. Defendant's District Manager, Michelle Lowder, typically came to the restaurant where Plaintiff worked once or twice a week between the time Plaintiff was injured and her termination.

27. Plaintiff delivered documentation to Ms. Lowder confirming that she was to be seen by Dr. Joyner, and Ms. Lowder threw the documents away.

28. Plaintiff also told Ms. Lowder that she had a tear in her shoulder, and she showed Ms. Lowder documentation of the MRI results.

29. Following her termination, Plaintiff promptly filed a claim for unemployment benefits with the Tennessee Department of Labor & Workforce Development, Division of Employment Security. Defendant responded in writing to Plaintiff's unemployment claim by falsely claiming that Plaintiff had made inappropriate comments about co-workers to customers and other employees. With no hearing taking place as to Plaintiff unemployment claim, it was denied.

30. Plaintiff then secured counsel and on May 18, 2011, appealed the denial of her unemployment benefits claim for which a telephonic hearing was scheduled for July 5, 2011.

31. After due notice to all parties, including the Defendant, a telephonic hearing occurred on Tuesday, July 5, 2011, at which Plaintiff appeared and testified by telephone. The Defendant, even though it had received notice of the July 5, 2011, unemployment appeal telephonic hearing, failed to appear. The earlier denial decision was reversed and Plaintiff was then awarded unemployment benefits after providing credible testimony at the July 5, 2011, hearing that, following her February 5, 2011, injury, she performed her duties to the best of her ability, and that she had received no warnings regarding her work performance prior to being notified of the termination.

32. As a direct and proximate result of Plaintiff's termination, she has suffered a loss of income and a loss of employment benefits. She has additionally suffered humiliation, embarrassment, and mental anguish.

## RETALIATORY/WRONGFUL DISCHARGE CLAIM RELATING TO ASSERTION OF WORKERS' COMPENSATION RIGHTS:

33. Plaintiff incorporates by reference and re-alleges all of the allegations made in the preceding paragraphs.

34. The sole reason for Plaintiff's discharge by Defendant was her attempt to exercise her statutory and common law rights to fully assert a claim pursuant to the Tennessee Workers' Compensation Act (TWCA).

35. Alternatively, Plaintiff submits that a substantial motivating factor in Defendant's decision to terminate her employment was her attempted assertion of her rights pursuant to the TWCA and common law.

36. It is a clear violation of public policy for Plaintiff to be terminated for having attempted to exercise her statutory and common law rights pursuant to the TWCA.

37. Defendant's termination of Plaintiff for having attempted to exercise her right pursuant to the TWCA was an intentional, willful and reckless act.

38. Plaintiff submits that, in addition to compensation for back pay and other damages, she should be fully restored to the position she would have held had she not been terminated with all of the pay, benefits and other rights she would have had but for her termination.

39. Alternatively, in addition to back pay and other damages, Plaintiff submits that she should be awarded front pay and the value of lost benefits for a period of five years from the date of the trial.

6

40. Wherefore, for Plaintiff's retaliatory/wrongful discharge claim resulting from her assertion of workers' compensation rights, she demands compensatory damages in the amount of $250,000.00 if her employment is restored, or $300,000.00 if it is not. Plaintiff also demands punitive damages in the amount of $500,000.00.

### RETALIATORY/WRONGFUL DISCHARGE CLAIM ARISING FROM HER ATTEMPTED ASSERTION OF RIGHTS PURSUANT TO THE AMERICANS WITH DISABILITIES ACT (ADA):

41. Plaintiff incorporates by reference and re-alleges all of the allegations made in the preceding paragraphs.

42. For ADA purposes, Defendant was Plaintiff's employer at all times relevant hereto, as the term employer is defined in the ADA at 42 U.S.C. §12111(5)(A) because it was a person for ADA purposes engaged in an industry affecting commerce which had employed 25 or more employees for each working day in each of 20 or more calendar weeks in the year preceding Plaintiff's termination on April 27, 2011.

43. Plaintiff was Defendant's employee for ADA purposes at times relevant to this litigation pursuant to 42 U.S.C. §12111(4) because she was employed by an employer to whom the ADA applied.

44. Pursuant to 42 U.S.C. §12111(8), at the time she was terminated, Plaintiff was a "qualified individual with a disability" who was able to perform the essential functions of the employment position she held.

45. At the time she was terminated, Plaintiff suffered from a "disability" for ADA purposes because her right shoulder injury substantially limited the major life activities of: (a) performing manual tasks; (b) lifting; (c) raising her arms above shoulder level; (d) working.

46. At a time when Plaintiff was a qualified individual with a disability, she made a request on the first day she was seen by Dr. Watkins, February 11, 2011, or shortly thereafter, for the reasonable accommodations necessary to comply with Dr. Watkins' restrictions which were: no lifting over 10 lbs., no pushing/pulling over 10 lbs. of force, and no reaching above shoulder.

47. Defendant accommodated Plaintiff's medical restrictions from February 11, 2011, to April 27, 2011.

48. On April 27, 2011, Defendant chose to no longer honor Dr. Watkins' restrictions and to no longer accommodate Plaintiff's disability. Defendant then discharged Plaintiff for attempting to exercise a statutory right which is a violation of a clear public policy as embodied in the ADA.

49. Alternatively, it is submitted that a substantial factor in Defendant's decision to terminate Plaintiff was her attempted exercise of her ADA protected rights.

50. Wherefore, Plaintiff demands compensatory damages in the amount $250,000.00 if her employment is restored, or $300,000.00 if it is not. Plaintiff also demands punitive damages in the amount of $500,000.00.

## TDA/DISABILITY DISCRIMINATION CLAIM:

51. Plaintiff incorporates by reference and re-alleges all of the allegations made in the preceding paragraphs.

52. The Defendant, for purposes of the THRA and TDA was Plaintiff's employer as that term is defined at T.C.A. §4-21-102(4) because Defendant has employed eight or more persons at all times relevant to this action.

53. The TDA embodies the rights and definitions of the ADA.

54. Pursuant to T.C.A. §8-50-103(a), the TDA prohibits discrimination in hiring and firing based solely on any physical, mental or visual handicap unless that handicap prevents the employee from performing the duties required by the employment position.

55. For ADA/TDA purposes, Plaintiff has been a qualified individual with a "disability" at all times relevant to this litigation because of her right shoulder injury.

56. Plaintiff satisfactorily performed the essential functions of her employment position after receiving medical restrictions from Dr. Watkins and workplace accommodations from February 11, 2011, to April 27, 2011.

57. The right shoulder injury suffered by Plaintiff constitutes a "disability" for ADA/TDA purposes because it substantially limited or affected one or more of Plaintiff's major life activities.

58. At the time Plaintiff was terminated, she had a record of having a disability based upon her workplace injury to her right shoulder, the specifics of which were well known by agents of the Defendant as it had already received copies of medical records pertaining to her injury and treatment of it.

59. As of April 27, 2011, Defendant regarded Plaintiff as being disabled due to her right shoulder injury.

60. Plaintiff's termination violates the ADA and TDA because it was directly and proximately caused by Plaintiff's having a disability, having a record of having a right shoulder disability, and being regarded by the Defendant as having a disability.

61. 42 U.S.C. §12112(b)(5)(a) obligates employers to provide reasonable accommodations to persons such as Plaintiff who are qualified individuals with a disability. The

refusal of Defendant to continue to provide Plaintiff with reasonable accommodations along with its termination of her represent acts of intentional discrimination pursuant to the ADA and TDA.

62. The actions of the Defendant as described herein constitute discrimination against Plaintiff, a qualified individual with a disability as to the terms, conditions, and privileges of employment in violation of 42 U.S.C. §12112(a) and the TDA.

63. As the direct and proximate result of Defendant's violation of the THRA and TDA for disability discrimination, Plaintiff seeks damages for the following:

    a. Back pay with interest thereon;

    b. The value of lost employment benefits with interest thereon;

    c. Damages for humiliation, embarrassment, and mental anguish in the amount of $250,000.00 which shall be additional to all other damages Plaintiff may be awarded;

    d. Restoration to her employment with the Defendant, along with all rights and privileges she would have possessed had she not been the victim of discrimination;

    e. Alternatively, if Plaintiff is not restored to her employment with the Defendant, she requests an additional award of front pay for a period of five years from the date of trial;

    f. An award of attorney's fees, witness fees, and other litigation expenses, pursuant to T.C.A. §4-21-311(b).

64. Plaintiff further prays for general and equitable relief as may be deemed appropriate by the Court.

10

Case 3:12-cv-00414 Document 1 Filed 04/26/12 Page 10 of 11 PageID #: 10

Respectfully submitted,

/s/ R. Steven Waldron

R. STEVEN WALDRON, BPR #2767
Attorney for Plaintiff
WALDRON, FANN & PARSLEY
202 W. Main Street
Murfreesboro, TN 37130
(615) 890-7365

11