UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAROLYN C. GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:12-cv-0414 |
| v. | ) | |
| | ) | Judge Sharp |
| MID SOUTH WAFFLES, INC. d/b/a | ) | |
| WAFFLE HOUSE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Defendant Mid South Waffles, Inc. d/b/a Waffle House, Inc. filed a Motion for Summary Judgment (Docket Entry No. 35), to which Plaintiff Carolyn Graves filed a response in opposition (Docket Entry Nos. 36 and 37), and Defendant filed a reply (Docket Entry No. 42).

## I. FACTUAL BACKGROUND

Carolyn Graves ("Plaintiff" or "Graves") began working as a Waffle House server for Southeast Waffles, LLC, an independent Waffle House franchisee and predecessor company to Mid South Waffles, Inc. ("Defendant" or "MSW"), when she was fifteen years old.[1] In 1998, she transferred to a Southeast Waffles-owned Waffle House restaurant in Smyrna, Tennessee, where she remained until her employment ended in 2011. Plaintiff worked as a server throughout that period. In addition, according to Plaintiff, she served as an unofficial "unit

---

[1] Unless otherwise noted, the facts are drawn from *Plaintiff's Response to Defendant's Statement of Material Undisputed Facts in Support of its Motion for Summary Judgment, Defendant's Response to Plaintiff/Non-Movant's Concise Statement of Additional Facts that are Material and as to which Their[sic] Exists Genuine Issues to be Tried* (Docket Entry Nos. 39 and 41), and declarations and other related exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

trainer," responsible for training over 100 new employees on the company's nondiscrimination and employee conduct policies.[2]

In October 2009, MSW purchased Southeast Waffle's assets, and Plaintiff became an employee of Defendant. As a server, Plaintiff reported to a unit manager, who in turn reported to a district manager with oversight over several Waffle House units. During the relevant period, Plaintiff's unit was managed by a number of individuals who rotated through the unit, but her district manager, Michelle Lowder ("Lowder"), remained in place during the final four years of Plaintiff's employment.

As a server, Plaintiff's job called on her to consistently lift up to 35 lbs. overhead. On February 4, 2011, as she was lifting dishes from the dishwasher to an overhead shelf, she felt a "pop" in her right shoulder. She mentioned the experience in passing to then-unit manager Joel Stevens ("Stevens") but continued about her work. The following day, she reported her injury to Lowder, who was visiting the unit. Lowder referred Plaintiff to a poster with contact information for the workers' compensation carrier. Plaintiff visited a physician later that same day.

After taking previously-scheduled time off, Plaintiff returned to work six days later. At that time, her only work-related physical restriction was that she was not allowed to empty the dishwasher and lift dishes overhead as she had done when she was injured. Plaintiff immediately resumed her pre-injury schedule of working 36-40 hours per week. Lowder and the rest of the Waffle House management team fully accommodated Plaintiff's injury throughout the remainder of her employment. These accommodations included allowing Plaintiff to visit her physician as

---

[2] Company policies prohibited employees from engaging in threatening and insubordinate behavior. MSW also offered its employees a toll-free, 24-hour hotline through which they could register anonymous complaints about coworker and management mistreatment.

needed and honoring her doctor's request that she not be required to unload the dishwasher and restack the plates.

Beginning in April 2011, Lowder began receiving a number of complaints about Plaintiff's interactions with a co-worker, Brandi Haney ("Haney"). Specifically, Haney complained that Plaintiff was spreading rumors to coworkers and customers that Haney was married to a drug-using pedophile. However, Plaintiff insisted that she was merely a recipient of this gossip, and that she dutifully brought these rumors to Lowder's attention as a concerned coworker.[3] (Graves Dep., pp. 134-136).

Lowder investigated these allegations, which included interviewing co-worker's of Haney and Plaintiff. According to Defendant, several coworkers confirmed that Plaintiff was the source of this gossip. (Lowder Dep., p. 45). Based on these reports, as well as prior reports from unit manager Stevens that Plaintiff had twice been written up for engaging in gossip,[4] Lowder scheduled a meeting with Plaintiff to suspend her for an indeterminate period of time. (Docket Entry No. 35-1 at 4).[5] This meeting date was accelerated, however, following Haney's subsequent assertions that Plaintiff had learned about Lowder's investigation and was now purposely bumping into Haney when they worked together, and that Haney was going to resign

---

[3] According to Plaintiff, Haney's husband brought photographs related to his arrest and a charge of selling drugs to an undercover police officer in Smyrna to Waffle House. He showed these pictures to customers. (Graves Dep., p.134). A customer of Plaintiff's heard what he was saying, and the customer asked Plaintiff if drugs were sold at the restaurant. (*Id.*). Plaintiff then promptly went to the back of the restaurant and told Lowder about the situation. (*Id.* at pp. 134-135). Lowder then called Ms. Haney to the back of the restaurant and a short while later, wherein Haney called Plaintiff a snitch. (*Id.*).

[4] Plaintiff claims she was never suspended or written up while employed by Defendant or its predecessor, Southeast Waffles. (Graves Declaration, ¶13; Graves Dep., p.137). Although Stevens testified that he had twice disciplined Plaintiff for engaging in gossip, there are no records in Plaintiff's personnel file that document any alleged suspensions prior to her being terminated on April 27, 2011.

[5] Lowder claims to have taken with her to the April 27, 2011, meeting a suspension document but does not to know the current location of the document. The suspension document is not in Plaintiff's personnel file.

if Lowder did not get Plaintiff to stop harassing her. (Lowder Dep., pp. 45, 66, 85, 105-6, 111-13).

The meeting, which occurred on the afternoon of April 27, 2011, was attended by Plaintiff, Lowder, and Stevens' replacement as unit manager, Tamara Minshall ("Minshall"). Lower confronted Plaintiff with the results of her investigation as well as Haney's more recent complaint that she was being bumped and harassed.[6] Plaintiff again denied Haney's accusations.

According to Plaintiff, Lowder stated "What's your problem? You're moping, slacking, and not doing your job. I don't understand why you don't put the dishes up. You are off restrictions, you are not working under doctors' orders any more. You are no longer on workers' compensation. I want you out of my unit." (Graves Dep., p. 108). During this confrontation, Lowder changed the discipline from a suspension to a termination[7] – and threatened to call the police if Plaintiff did not immediately vacate the store.

Following her termination in April 2011, Plaintiff learned that her right shoulder, which she thought she had only strained, required surgery to repair a tendon. Following her surgery in June 2011, Plaintiff was released by her physician in December 2011.

---

[6] Even though there were five video cameras in or about the premises of the Waffle House at the time of this alleged incident, Lowder did not check the videotapes to see if they recorded the bumping incident because she had dealt with Haney for seven years and just believed her. (Lowder Dep., p.46).

[7] According to Defendant, Lowder changed the discipline from a suspension to a termination because she felt threatened by Plaintiff's behavior. Defendant claims that Plaintiff began screaming, cursing, and telling Lowder "the devil is going to get you." (Lowder Dep., pp. 55, 67, 82, 122; Minshall Aff., pp. 2-3; Miller Aff., 8). Plaintiff denies making such a comment. (Graves Decl., ¶11). In fact, Plaintiff maintains she left both the meeting and the Waffle House premises quietly. (Graves Dep., p. 111).

## II. ANALYSIS

Plaintiff has brought a claim against her former employer alleging that her employment was terminated in April 2011 as a result of a shoulder injury she experienced at work, in violation of the substantive and anti-retaliatory provisions of the Americans with Disabilities Act ("ADA"), as amended, and the Tennessee Disability Act ("TDA"). Additionally, she alleges that her termination constituted retaliation for filing a workers' compensation claim in violation of Tennessee law. Defendant has moved for summary judgment on all claims.

### A. Summary Judgment Standard

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. ADA and TDA Discrimination Claims**

Plaintiff alleges that Defendant discriminated against her and terminated her because she was disabled, in violation of the ADA and the TDA.[8]

The ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff may prove a disability discrimination case based upon direct or indirect evidence. *Kempter v. Michigan Bell Telephone Co.,* 534 Fed.Appx. 487, 490, 2013 WL 4504760 at *3 (6th Cir. Aug. 26, 2013).

In this case, Plaintiff seeks to prove her disability claim based upon indirect evidence. "To make out a *prima facie case* of employment discrimination through indirect evidence under [the ADA], a plaintiff must show that '1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.' " *Whitfield v. Tennessee,* 639 F.3d 253, 258–59 (6th Cir. 2011). (quoting, *Macy v. Hopkins Cnty. Sch. Bd. of Educ.,* 484 F.3d 357, 365 (6th Cir. 2007)). "Once a plaintiff

---

[8] A claim brought under the TDA "is analyzed in the same manner as [a] claim[] brought under the ADA." *Nance v. Goodyear Tire & Rubber Co.,* 527 F.3d 539, 553 n.5 (6th Cir. 2008)).

6

establishes a *prima facie* case of discrimination, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its actions." *Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1105 (6th Cir. 2008) (quoting, *Gribcheck v. Runyon,* 245 F.3d 547, 550 (6th Cir. 2001)). "If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination." *Id.*

The parties dispute whether Plaintiff is disabled. (Docket Entry Nos. 35-1 at 8 and 37 at 3). Under either the direct or indirect method of proving disability-based employment discrimination, Plaintiff must prove that, at pertinent times, she suffered from a "disability" as defined by the ADA. *Doren v. Battle Creek Health System,* 187 F.3d 595, 598 (6th Cir. 1999). The ADA Amendments Act of 2008 ("ADAAA Amendments"), which became effective January 1, 2009, broadened the definition of disability in 42 U.S.C. § 12102. *Jones v. Nissan N. Am., Inc.,* 438 F. App'x 388, 397 n. 9 (6th Cir. 2011). The relevant period to assess the existence of a plaintiff's disability is the time of the discriminatory acts. *Swanson v. Univ. of Cincinnati,* 268 F.3d 307, 316 (6th Cir. 2001). Under the ADA, an individual is disabled if she has:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1). Plaintiff contends she had a physical impairment that substantially limited the major life activities of performing manual tasks – reaching and lifting – and working. (Docket Entry No. 37 at 4-5, 8).

In determining whether a person is disabled under subsection 1(A), the Court must decide first, whether the plaintiff suffered from a mental or physical impairment and second, if the

impairment exists, whether it substantially limits a major life activity. *Childers v. Hardeman County Bd. of Educ.,* 2015 WL 225058 (W.D.Tenn. 2015) (citing *Azzam v. Baptist Healthcare Affiliates, Inc.,* 855 F.Supp.2d 653, 658–59 (W.D.Ky. 2012)). EEOC regulations define a physical or mental impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine[.]" 29 C.F.R. § 1630.2(h)(1).

Here, there is no question that Plaintiff had a physical impairment. In fact, the parties agree that Lowder and the rest of the Waffle House management team fully accommodated Plaintiff's shoulder injury throughout the remainder of her employment. These accommodations included allowing Plaintiff to visit her physician as needed and honoring her doctor's request that she not be required to unload the dishwasher and restack the plates. Therefore, the question is whether this impairment substantially limited a major life activity.

Subsequent to enactment of the ADAAA Amendments, a substantial limitation need not prevent or severely restrict an individual from performing a major life activity. 29 C.F.R. § 16390.2(j) (iii)-(v). However, not every impairment constitutes a disability within the meaning of the ADA — the ADAAA Amendments retained the requirement that the "substantially limits" standard demands a marked functional limitation compared to most people in the general population. *Id.* Furthermore, an impairment that only moderately or intermittently prevents an individual from performing a major life activity only substantially limits that activity if the impairment would do so when active. *Id.* at § 1630.2(j)(vii); *see also Morales v. Bellsouth Telecommunications, Inc.,* 2009 WL 1322577 at *7 (M.D.Tenn. May 11, 2009).

As Plaintiff points out, among major life activities recognized by the ADA is working. Where the "major life activity" at issue is "working," the statutory phrase "substantially limits" requires, at a minimum, that the plaintiff show that he is restricted from working in a broad class of jobs, or a broad range of jobs in various classes. *Morales,* 2009 WL 1322577 (citing *Salim v. MGM Grand Detroit LLC,* 106 Fed. Appx. 454, 459 (6th Cir. 2004); *see also Swanson v. Univ. of Cincinnati,* 268 F.3d 307, 317 (6th Cir. 2001) (holding "substantial limitation" as to working further means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities"). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *See, e.g., Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 525, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999); *Salim,* 106 Fed. App'x at 459; *Swanson,* 268 F.3d at 317.

As an initial matter, Plaintiff merely skims over this argument in her response brief. Although she positions that "among major life activities recognized by the ADA is working," she fails to support this contention any further.[9] *See* (Docket Entry No. 37 at 6). Moreover, Plaintiff makes the blanket statement that "[i]t is now known that Plaintiff has a permanent disability from her shoulder injury" and without any further support, merely cites to the Independent Medical Evaluation Report ("IME") of Dr. David Gaw at "page 4." The Court has reviewed the relevant portion of the IME, which states (1) Plaintiff "does not have normal movement in her right shoulder;" and (2) she "retains 6% PPI to the right upper extremity or <u>4% to the whole person</u>." (emphasis is original). (Dr. Gaw IME at p. 4). The Court also notes on page 3 of the IME that Plaintiff "is not a candidate for further surgery or diagnostic procedures." (*Id.* at p. 3).

---

[9] Plaintiff likewise does this with her contention that she has a injury that "substantially limited the major life activities of performing manual tasks, reaching and lifting." *See* (Docket Entry No. 37 at 5).

Plaintiff has provided no evidence (or even attempted an argument) that she is "restricted from working in a broad class of jobs, or a broad range of jobs in various classes." *Morales,* 2009 WL 1322577. Plaintiff's evidence also fails to demonstrate any substantial limitation in her ability to work (or preforming the major life activity of manual tasks − reaching or lifting). Certainly, Plaintiff's evidence does not demonstrate her general inability to work or inability to perform a single, particular job. Rather, the evidence shows Plaintiff could – and did − continue performing her same position at Waffle House, working her pre-injury schedule of 36-40 hours per week until her termination. Given Plaintiff's unsupported argument regarding her substantial limitation, the Court concludes that Plaintiff cannot support a claim of disability.

Consequently, Plaintiff has not established a genuine issue of material fact as to whether her major life activity of working (or preforming the major life activity of manual tasks − reaching or lifting) is substantially limited by her shoulder injury, as compared with the average person in the general population. Therefore, summary judgment will be granted as to Plaintiff's claims of ADA and TDA discrimination.

### C. ADA and TDA Retaliation Claims

Next, Plaintiff alleges she was retaliated against when "she engaged in protected activity for ADA/TDA purposes" by requesting restrictions on February 11, 2011 – and was terminated "without warning or even being consulted" sixty-nine days later. (Docket Entry No. 37 at 14).

The ADA prohibits retaliation against an individual because she opposes her employer's disability discrimination. 42 USC § 12203(a). *See also, Johnson v. University of Cincinnati,* 215 F.3d 561, 578 (6th Cir. 2000). A *prima facie* case of retaliation under the ADA requires a showing that " '1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to

the plaintiff; and 4) the protected activity and the adverse employment action are causally connected." *Spence v. Donahoe,* 515 F. App'x 561, 572 (6th Cir. 2013) (quoting *Gribcheck v. Runyon,* 245 F.3d 547, 550 (6th Cir. 2001)). " 'The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id.* (quoting *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000)). If a *prima facie* case is established, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action. *Cardenas–Meade v. Pfizer, Inc.,* 510 F. App'x 367, 372 (6th Cir. 2013). If the employer does so, the plaintiff then has the burden to show that such a reason was merely pretext for discrimination. *Id.*

The parties do not dispute that Plaintiff has established the first three elements of her retaliation claim. The parties dispute, however, the fourth element and the Court must determine whether Plaintiff has demonstrated a causal connection between her requested restrictions and her termination. Plaintiff argues that the temporal proximity between her request for accommodation for her shoulder injury and her termination is sufficient to overcome her *prima facie* case. (Docket Entry No. 37 at 14). Defendant argues that while "temporal proximity alone may sometimes be held sufficient to establish a prima facie case of retaliation [], Plaintiff still cannot oversome Defendant's legitimate, non-retaliatory reson for her termination . . . " (Docket Entry No. 37 at 42).

The Sixth Circuit has held that temporal proximity may be sufficient to establish causation at the prima facie stage. *See Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 826 (6th Cir. 2002); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314-15 (6th Cir. 2001). However, the Supreme Court instructs that, where temporal proximity alone forms the basis of the causation element, such proximity "must be very close." *Clark County Sch. Dist. v. Breeden*,

11

532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001), reh'g denied, 533 U.S. 912, 121 S.Ct. 2264, 150 L.Ed.2d 248 (June 11, 2001) (internal quotation marks omitted). In the case at hand, Plaintiff requested work restrictions on February 11, 2011. Less than three months later, on April 27, 2011, Plaintiff was terminated. The Court finds that this period of time is sufficient to establish a *prima facie* case of retaliation under the ADA.[10]

Next, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant claims that based on reports from fellow co-workers, as well as prior reports from unit manager Stevens that Plaintiff had twice been written up for engaging in gossip, Lowder scheduled a meeting with Plaintiff to suspend her for an indeterminate period of time. Its reasons for terminating Plaintiff consist of "Lowder's good-faith belief that Plaintiff was engaging in sustained harassment of Haney, as well as Lowder's perception that Plaintiff engaged in threatening insubordination towards her during their disciplinary meeting." (Docket Entry No. 35-1 at 9). Plaintiff concedes Defendant has articulated a proposed legitimate business decision for her termination. (Docket Entry No. 37 at 3).

As Defendant has proffered a legitimate, non-discriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to prove that Defendant's stated reasons are a pretext for disability discrimination. There are several factors before the Court that could support an inference that Defendant's legitimate reason could be pretextual and would preclude summary judgment at this time: (1) whether Plaintiff had, in fact, been disciplined for gossip in the past by both Steven and Lowder (Plaintiff contends she was never written up or disciplined

---

[10] "A plaintiff's burden in establishing a *prima facie* case is not intended to be an onerous one." *Skrjanc v. Great lakes Power Service Co.,* 272 F.3d 309, 315 (6th Cir. 2001). However, "such temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Id.* at 317.

for such and there is no evidence of such documentation in her personnel file); (2) whether Lowder conducted an investigation of Plaintiff's alleged harassment of Haney prior to the suspension/termination meeting (such documentation has also managed to disappear from her personnel file); and (3) whether the actual encounter between management and Plaintiff on the day of her termination arose to the level claimed by Defendant (although the Court is aware Lowder ultimately threatened to call the police if Plaintiff did not leave the premise, Plaintiff's version of events was quite different from Defendant's − with Plaintiff maintaining she left the premise quietly).

"'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Reeves v. Sanderson Plumbing Prod.'s Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). Ultimately, it will be for the jury to determine if there was a connection between Plaintiff's requested accommodations and the consequent actions in her employment. Accordingly, summary judgment is denied as to Plaintiff's claim of ADA and TDA retaliation.

### D. Workers' Compensation-Related Retaliatory Discharge Claim

Tennessee statutes protect employees from discharge because of their race, religion, sex, age, physical condition, mental condition, and, by ruling of the Tennessee Supreme Court, from discharge in retaliation for asserting a workers' compensation claim. *Clanton v. Cain–Sloan Co.,* 677 S.W.2d 441, 445 (Tenn. 1984) (interpreting T.C.A. § 50–6–114 and concluding that the statute regarding employment contracts "evidences a clear public policy" that employees should be protected from having their employment terminated from asserting a workers' compensation claim); *see Anderson v. Standard Register Co.,* 857 S.W.2d 555, 556–57 (Tenn. 1993), *overruled*

*on other grounds as recognized by Perkins v. Metro. Gov't of Nashville,* 380 S.W.3d 73, 79 n. 8 (Tenn. 2012).

In order to make out a *prima facie* case for retaliatory discharge, a plaintiff must prove that (1) [s]he was an employee of the defendant at the time of the injury; (2) [s]he made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated [her] employment, and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate [her] employment. *Anderson,* 857 S.W.2d at 558. Once the plaintiff establishes each of these elements, the burden shifts to the defendant-employer to articulate a reason for the discharge that was legitimate and non-retaliatory. *Id.* If the employer proffers a legitimate, non-retaliatory reason for the discharge, then the burden shifts back to the plaintiff to prove that the employer's proffered reason was pretextual. *Smith v. Bridgestone/Firestone, Inc.,* 2 S.W.3d 197, 200 (Tenn.Ct.App. 1999) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Here, Plaintiff has established, and Defendant does not dispute, the first three elements of her *prima facie* case − that is, (1) Plaintiff was an employee of Defendant at the time of her injury; (2) Plaintiff made a claim against Defendant for workers' compensation benefits; and (3) Plaintiff's employment was terminated by Defendant. Defendant argues, however, that Plaintiff has failed to meet her burden of establishing a causal connection between her filing a workers' compensation claim and her termination. (Docket Entry No. 35-1 at 15-16).

To demonstrate that Plaintiff's workers' compensation claim was a "substantial factor" in her termination, she must either show direct or "compelling circumstantial evidence" of a causal connection between the workers' compensation claim and her termination. *Brasfield v. Martinrea Fabco Automotove Structures (USA), Inc.,* 2013 WL 2644410, at *3 (M.D.Tenn. June

12, 2013); *see also Reed v. Alamo Rent–A–Car, Inc.,* 4 S.W.3d 677, 685 (Tenn.Ct.App. 1999). Additionally, a plaintiff, in an effort to show a causal connection, can present circumstantial evidence in various forms, which may include: (1) "the employer's knowledge of the compensation claim"; (2) "the expression of a negative attitude by the employer towards an employee's injury"; (3) "the employer's failure to adhere to established company policy"; (4) "discriminatory treatment compared to similarly situated employees"; (5) "sudden and marked changes in an employee's performance evaluations after a workers' compensation claim"; or (6) "evidence tending to show that the stated reason for discharge was false." *Newcomb v. Kohler Co.,* 222 S.W.3d 368, 391 (Tenn.Ct.App. 2006).

While not alone sufficient, "temporal proximity plus other circumstantial evidence of causation" can present a *prima facie case* for retaliation under Tennessee law. *Craig v. Porter Cable/Delta,* No. 1:05–1018, 2006 WL 1006857, at *8 (W.D.Tenn. Apr. 17, 2006) (citing *Mason v. Seaton,* 942 S.W.2d 470, 473 (Tenn. 1997)). Temporal proximity may also serve as evidence of causation if the plaintiff's prior job performance was otherwise satisfactory. *See Young v. United Parcel Service, Inc.* 992 F.Supp.2d 817, 832 (M.D.Tenn Jan. 16, 2014) (citing Conatser v. Clarksville Coca-Cola Bottling Co.,,* 920 S.W.2d 646, 648 (Tenn. 1995)).

When considering the evidence in the light most favorable to Plaintiff (and no record to prove otherwise), the evidence shows in Plaintiff's nearly twenty years of employment with Defendant, she was never disciplined or written up for unsatisfactory job performance – and within less than three months of her workers' compensation claim, she was terminated. The record reflects that Defendant clearly knew Plaintiff had filed a compensation claim, and there are material questions of facts as to whether Defendant's stated reason for discharge was false. *Newcomb,* 222 S.W.3d at 391. Here, the Court finds there is evidence, albeit not profuse, from

which a jury could conclude that Plaintiff's workers' compensation claim was a "substantial factor" in her termination. Hence, Plaintiff's *prima facie* case has been met by the slimmest of reeds.

As stated *supra*, as with Plaintiff's ADA/TDA retaliation claim, although Defendant proffers evidence showing legitimate non-discriminatory reasons for its actions, there is also evidence from which a jury could conclude that Defendant's explanations are just a pretext for retaliation. Summary judgment is therefore denied as to this claim.

### E. Punitive Damages

Lastly, Defendant has moved for summary judgment on the issue of punitive damages. The parties agree that the federal and state laws that Plaintiff is suing under permit the recovery of punitive damages. This Court has already found that the legitimacy of Defendant's rationale for termination presents a jury issue. As such, it would be inappropriate for the Court to find, as a matter of law, that this is not a punitive damages case. Therefore, the Court denies Defendant's request for summary judgment on the issue of punitive damages.

## III. CONCLUSION

For all of the reasons stated, Defendant's Motion for Summary Judgment (Docket Entry No. 35) will be granted in part and denied in part. The motion will be granted with respect to Plaintiff's ADA and TDA discrimination claims but denied as to the ADA and TDA retaliation claims as well as the retaliatory discharge and punitive damages claims.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE